### 0613

MACE INDUSTRIES, INC., d/b/a Semblex Custom Equipment Assemblers and Ozark Industrial Air Company, Respondent v. PADDOCK POOL EQUIPMENT COMPANY, INC., d/b/a Refinite Water Conditioning Company, Appellant.

(339 S. E. (2d) 527)

Court of Appeals

*Benjamin A. Johnson,* of *Roddey, Carpenter & White,* Rock Hill, *for appellant.*

*Mitchell K. Byrd,* of *Byrd & Byrd,* Rock Hill, *for respondent.*

Heard Oct. 24, 1985.

Decided Jan. 21, 1986.

CURETON, Judge:

This appeal involves a claim by respondent, Mace Industries, Inc. d/b/a Semblex Custom Equipment Assemblers and Ozark Industrial Air Company (Mace) against appellant Paddock Pool Equipment Company, Inc. (Paddock) for the balance of the purchase price of certain water treatment equipment. and for collection costs. Paddock counterclaimed to Mace's complaint alleging that since Mace had given notice of its intent to dishonor all implied warranties, Paddock was entitled to a judicial declaration of what warranties covered the equipment. The trial judge found Mace

entitled to the balance of the purchase price together with compounded interest and collection costs. He also found that only a limited warranty covered the equipment. Paddock appeals. We affirm.

The facts giving rise to this appeal are basically undisputed. The parties' business relationship commenced in October 1981 when Mace sent a quotation to Paddock for the equipment. The quotation was in the form of a sales agreement which contained the terms and conditions on which Mace proposed to sell the equipment to Paddock. Among other things, the sales agreement contained a provision that all invoices must be paid within the time specified on the invoices; that any balance 30 days overdue would be subject to a delinquency charge; and that Paddock would be required to reimburse Mace for any collection costs and attorneys' fees incurred in collecting any past due debts. Finally, the sales agreement provided for a limited warranty and disclaimed all other warranties.

Upon receipt of Mace's quotation, Paddock responded with a purchase order which referred to the quotation. The reverse side of the purchase order contained certain terms and conditions. These terms did not include provisions for attorneys' fees, delinquency charges, collection costs or a warranty. Mace promptly acknowledged receipt of Paddock's purchase order and excepted to two conditions on the reverse of the purchase order. The purchase order, as did the quotation, contained a provision that the document constituted the entire agreement of the parties which could be modified only by written agreement of the parties. Paddock claims the purchase order was a counteroffer to purchase the equipment on the terms and conditions contained in the purchase order, while Mace characterizes the purchase order as an acceptance of its offer.

The crux of the parties' dispute is what warranties are applicable to the equipment. Mace argues that the limited warranty contained in the sales agreement is the only applicable warranty. On the other hand, Paddock argues that since the purchase order contains no warranties the implied warranties provide for in the Uniform Commercial Code cover the equipment. Another aspect of the parties' dispute is whether delinquency charges, collection costs and attorneys' fees are recoverable.

In an action at law tried by a judge without a jury, his findings of fact have the effect of a jury verdict unless he committed some error of law leading him to an erroneous conclusion or unless the evidence is reasonably susceptible of only the opposite conclusion. *Midland Guardian Co. v. Thacker*, 280 S. C. 563, 314 S. E. (2d) 26 (Ct. App. 1984). The parties agree that the facts are undisputed. Therefore, only the trial judge's conclusions of law based on the foregoing facts are challenged. We may thus review such conclusions. *Midland Guardian Co. v. Thacker*, 280 S. C. at 563, 314 S. E. (2d) at 29.

Close analysis must be made of Section 36-2-207, 1976 Code of Laws of South Carolina in order to determine what constitutes the contract of the parties in view of the language in the purchase order. Section 36-2-207 provides in part:

### Additional terms in acceptance or confirmation

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Prior to enactment of the Uniform Commercial Code, a purported acceptance containing terms that did not "mirror" those of the offer operated as a rejection thereof and amounted to a counterclaim. *See e.g., Sossamon v. Littlejohn*, 241 S. C. 478, 486, 129 S. E. (2d) 124, 126 (1963) ("To con-

stitute a contract the acceptance of the offer must be absolute and identical with the terms of the offer. If one offers another to do a definite thing, and that other person accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat or it is in effect a counter proposal.").

Uniform Commercial Code Section 2-207(1)[1] was designed to abrogate two "rather severe common-law concepts, the so called 'mirror image' rule and its 'last shot' consequence. Annot., 72 A. L. R. (3d) 479, 488 (1976); *Leonard Pevar Co. v. Evans Products Co.*, 524 F. Supp. 546, 550 (D. Del. 1981). Under this code section an expression of acceptance of an offer creates a contract on the offered terms despite additional or different terms contained in the acceptance unless the acceptance is expressly made conditional on assent to the additional or different terms. *Falcon Tankers, Inc. v. Litton Systems, Inc.*, 355 A. (2d) 898 (Del. Super 1976). "In other words, the result of the offeree making his acceptance expressly conditional on the offeror's assent is the transformation of the offeree's document into a traditional counter-offer." 355 A. (2d) at 906.

The dispositive question in this appeal is whether Paddock made its acceptance expressly conditional on Mace's assent to the terms and conditions contained in the purchase order. A number of jurisdictions which have considered the question have held that to convert an acceptance into a counteroffer under Section 2-207(1), the conditional nature of the acceptance must be clearly expressed in a manner sufficient to notify the offeror that the offeree is unwilling to proceed with the transaction unless the additional or different terms are included in the contract. See numerous cases collected in Annot., 22 A. L. R. 4th 939, 948 (1983). We also adopt this view. We discern no indication from the sales agreement and purchase order that Paddock so conditioned its acceptance.

Paddock argues that because its purchase order was specifically accepted by Mace and because the purchase order also contained on its reverse side (1) a

---

[1] Uniform Commercial Code Section 2-207 is codified in Section 36-2-207, 1976 Code of Laws of South Carolina.

notice that "THE SELLER AGREES TO ALL OF THE FOLLOWING TERMS AND CONDITIONS" and (2) a provision that the order form shall constitute the entire agreement of the parties, these requirements made its acceptance expressly conditional upon Mace's acceptance of the terms contained in the purchase order. We disagree. Several courts have considered the effect of an acceptance specifying that it was subject to terms and conditions contained therein or that it superseded all other agreements. The courts have held that an acceptance does not fall within the proviso in Section 2-207(1) unless the acceptance clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the new terms. *See e.g., Dorton v. Collins & Aikman Corp.*, 453 F. (2d) 1161, 1167-68 (6th Cir. 1972); *Idaho Power Co. v. Westinghouse Electric Corp.*, 596 F. (2d) 924, 926-27 (9th Cir. 1979). The fact that Paddock followed through with the purchase even though Mace in its acknowledgement of receipt of the purchase order expressly rejected two provisions contained on the reverse of the purchase order amply demonstrates to us that Paddock was willing to proceed with the purchase of the equipment even though Mace did not assent to all the terms contained in the purchase order.

Under the provisions of Section 36-2-207(2) the additional terms of the purchase order are to be construed as proposals for additions to the contract. We hold that the additional terms became a part of the contract between the parties inasmuch as (1) both parties are merchants, (2) Mace's offer did not expressly limit acceptance to the terms of its offer, and (3) the additional terms did not materially alter the proposed contract between the parties. *See* Section 36-2-207(2). Therefore, regarding the main issue in controversy, we hold that the provision contained in the sales agreement concerning the limited warranties shall control.[2]

[2] We may have reached a different result if the terms of the purchase order sought to disclaim the limited warranty or nullified the provision for payment of collection costs and attorney fees. But, where as here, the additional terms were consistent with the course of dealings between the parties as expressed in the quotation and sales agreement, which the purchase order does not purport to abrogate, we see no reason why the boiler plate terms found on the reverse side of the purchase order should become the sole terms of the contract between the parties. See Annot., 72 A. L. R. (3d) 479, 482-85 (1976).

Paddock finally argues that the trial judge should not have awarded collection costs, delinquency charges and attorneys' fees because invoices sent by Mace to Paddock, subsequent to the date of the contract, did not provide for these costs and charges. This argument is without merit in view of our holding that the terms of the sales agreement controlled the liability of Paddock for these charges. The sales agreement clearly provides for collection costs, delinquency charges and attorneys' fees in the event of default in the payment of sums due under the contract. We find no error in the trial judge's ruling on these matters.

Accordingly the order of the trial judge is

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.