## 20786

Joan M. JOST, Appellant, v. EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Respondent.

(248 S. E. (2d) 778)

*Brissey, Lathan, Smith & Barbare,* Greenville, *for appellant.*

*H. Donald Sellers,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondent.*

October 19, 1978.

LITTLEJOHN, Justice.

While John M. Jost was an employee of Uniroyal Merchandising Company, his life was insured by Equitable Life Assurance Society under an employee group policy in the amount of $19,500.00. His wife (plaintiff) was the beneficiary and has brought this action to recover benefits under the policy. The trial judge, sitting without a jury, ruled that she was not entitled to recover. She has appealed.

Jost voluntarily left his employment on March 1, 1976. Premiums had been deducted weekly from his paycheck by Uniroyal, which was agent for Equitable. All payments were current and his policy was in full force. At the time of his

resignation Jost had earned two weeks vacation, and on March 12, 1976, he received a check for two weeks accrued vacation pay. From that amount, as shown by his paycheck stub, Uniroyal deducted $2.10, representing a weekly premium. The paycheck represented a pay period ending March 7, 1976. Coverage under the policy was provided for an employee "for a period of 31 days following the termination of his employment," with "termination of employment" defined by the policy as "cessation of active work." Jost died on April 8, 1976. Equitable has retained the premium; so far as the record shows it did not acknowledge that the premium should be returned until the trial of the case.

The complaint in essence alleges that Jost died within the period of time covered by the policy. The answer admits nearly all of the facts, but denies that the death occurred while the policy coverage was effective. Of significance is the fact that the answer does not allege payment by mistake or through inadvertence, nor does it tender or offer to return premium collected after cessation of active work.

It is the contention of Equitable that coverage ended April 1, 1976, 31 days after Jost ceased to perform active work for Uniroyal. It is the contention of plaintiff that coverage ceased 31 days after March 19, or March 12, or March 7, on the theory that Equitable is estopped to deny the coverage because it accepted through Uniroyal, its own agent, a premium covering a period after Jost ceased to work.

The trial judge held that coverage was terminated on April 1, 1976, which was 31 days following cessation of active work on March 1, 1976, that the doctrine of waiver or estoppel was not applicable and that there was no coverage on Jost's death on April 8, 1976. We disagree.

It is common knowledge that life insurance premiums are collected in advance. Certainly no insurance company would sell life insurance on credit, with prem-

iums to be paid at the end of the coverage period. Accordingly, we hold that the premium collected on March 12 for the week ending March 7, 1976, was for the period ending March 14, 1976. The 31 days commenced to run as of that time. In keeping with § 15-1-20, *Code of Laws of South Carolina* (1976), time is computed by excluding the first day and including the last. Thirty-one days after March 14 would extend coverage through April 14, or six days beyond the death of the insured. If coverage was to be terminated as of the date that Jost ceased to work, no premium should have been deducted from the March 1, 1976, paycheck, or any paycheck thereafter.

We must determine the effect of continuing to collect premiums for two additional weeks. We think the following facts demand a reversal of the lower court. Equitable is a corporation and can only act through its agents. Uniroyal, by reason of § 38-51-10 of the 1976 Code, was the agent of Equitable, and accordingly the knowledge and act of Uniroyal was the knowledge and act of Equitable. Equitable, through Uniroyal, collected a premium from Jost, well knowing that Jost had ceased to work 12 days before. It notified Jost by way of the check stub that it had taken his premium money. Jost knew that Equitable had taken his money and did not complain or ask for its return. The case was tried some 18 months after the death of Jost. At that time Equitable admitted its error. Even then return of the premium was not tendered, but counsel did acknowledge: "Actually the two dollars and ten cents were deducted simply by error on the check and it is subject to refund." By collecting additional premiums for a period beyond employment, Equitable either (1) intended to give additional coverage (it sells nothing else), or (2) intended to give the insured nothing, or (3) collected the money by mistake. Mistake has not been pled and no evidence relative thereto has been submitted to the court. The action of Equitable, in retaining the premium and in not offering to refund it,

compels the court to ignore the mistake theory as did the lower court.

The plaintiff is entitled to recover under the law of estoppel, but we are not at all sure that application of the law of estoppel is necessary in order to warrant recovery in this case. If a landlord and tenant should enter a contract of lease to end on the last day of the year, and thereafter the landlord should collect an additional month's rent, it would hardly be argued that the tenant was not entitled to an additional month of occupancy. If the tenant remained on the premises for an additional month after the written lease expired, it would hardly be argued that the landlord was not entitled to collect an additional month's rent. By a similar token, Equitable having collected additional premiums should be expected under the facts of this case to provide additional coverage, notwithstanding the terms of the written policy.

This court had before it a similar factual situation in the case of *Pitts v. New York Life Ins. Co.*, 247 S. C. 545, 148 S. E. (2d) 369 (1966). It is different in two regards: first, New York Life tendered back the premium after the insured had died and alleged that the premiums were collected by mistake; secondly, the premiums were collected for a longer period of time. That which the court said is equally applicable here:

The essential elements of equitable estoppel are: (1) ignorance of the party invoking it of the truth as to the facts in question; (2) representations or conduct of the party estopped which mislead; (3) reliance upon such representations or conduct; and (4) prejudicial change of position as the result of such reliance. *Johnson v. Wabash Life Ins. Co.*, [244 S. C. 95, 135 S. E. (2d) 620]. The presence of these elements is not essential to the establishment of implied waiver, which results merely from conduct of the party against whom the doctrine is invoked from which voluntary relinquishment of his known right is reasonably

inferable. But the two doctrines are related, and have this in common: that the applicability of each in a particular situation results from conduct of the party against whom it is invoked which has rendered it inequitable that he assert a right to which, in the absence of such conduct, he would be entitled.

Whether an insurer, by accepting and retaining the premium for a coverage that by the terms of the policy is excluded or terminated, may be estopped to deny such coverage, must of course depend upon the circumstances of the particular case. For estoppel is an equitable doctrine, essentially flexible, and therefore to be applied or denied as the equities between the parties may preponderate. *Peoples National Bank of Greenville v. Manos Bros., Inc.,* 226 S. C. 257, 84 S. E. (2d) 857, 45 A. L. R. (2d) 1070. Where the insurer over a long period of time after the date prescribed by it for the termination of a particular coverage has continued to demand, accept and retain the premium fixed by it for that coverage, it may reasonably be inferred that the insured, who in the normal course of things relies upon the insurer's billing, has been misled by such conduct to believe that the insurer has continued to accept the coverage. Upon the same premise, excusable ignorance on the part of the insured as to the true fact, *i. e.,* that the insurer has made a mistake in its billing, may likewise be inferred.

As indicated heretofore the basic difference between this case and Pitts lies in the time element. We are of the opinion that the same result is required. The lower court relied largely on the case of *Conger v. Travelers Ins. Co.,* 266 N. C. 496, 146 S. E. (2d) 462 (1966); cases in other jurisdictions were also cited. These cases have not been ignored. We simply think that the logic of *Pitts* reaches the more equitable result.

In plaintiff's complaint attorney's fee was prayed under § 38-9-320 of the 1976 Code. Inasmuch as the lower court ruled in favor of Equitable, that issue was not reached. Upon

remand, counsel for plaintiff shall be entitled to pursue this facet of his complaint. This court intimates nothing relative to disposition of this matter.

Reversed and Remanded.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.